**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | | |
|---|---|---|
| TYRONE CARY JONES, | * | |
| Petitioner, | * | |
| | | CASE NO. 1:07-CV-90018 WLS |
| vs. | * | 28 U.S.C. § 2255 |
| | | CASE NO. 1:06-CR-0020 WLS |
| UNITED STATES OF AMERICA, | * | |
| Respondent. | * | |

## REPORT AND RECOMMENDATION

On September 18, 2006, Petitioner Jones filed a Waiver of Indictment, entered into a Plea Agreement with the Government, and pled guilty to Possession With Intent To Distribute More Than 50 Grams of Cocaine Base in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A)(iii) as charged in Count I of the Information filed on the same date. Jones also pled guilty to Possession With Intent to Distribute Cocaine in violation of 21 U.S.C. § 841(a)(1) and § 841 (b)(1)( C) as charged in Count II. He was sentenced on December 20, 2006, on each Count to a term of imprisonment of 188 months to be served concurrently. (R-11). Petitioner Jones did not file a direct appeal of his conviction and sentence, which, therefore, became final on December 31, 2006.[1]

On November 12, 2007, Jones filed a Motion To Vacate, Set Aside, or Correct his Sentence Pursuant to 28 U.S.C.§ 2255, on claims of ineffective assistance of counsel, including a claim that his counsel had failed to file a direct appeal when advised to do so. (R-16). An evidentiary hearing was ordered and new counsel was appointed to assist Petitioner Jones in preparation and conduct of

---

[1] *See Adkins v. United States,* 204 F.3d 1086, 1089(11th Cir. 2000) (When no direct appeal is made, the judgment of conviction becomes final once "the opportunity for direct appeal of the judgment is exhausted.").

the hearing. The hearing was held on February 29, 2008. Petitioner's new counsel filed a Memorandum Brief (R-25) in support of Petitioner's Motion To Vacate, Set Aside, or Correct his Sentence on April 1, 2008, after review of the hearing transcript (R-24). He cites to Petitioner's statements made in reference to his communication with his plea counsel regarding an appeal of his sentence at page 17 of the hearing transcript. Direct examination of Petitioner Jones, found on pages 17 and 18 of the transcript, reads as follows:

> Q. After the day you were sentenced, did you discuss with Mr. Finkelstein appeal issues?
>
> A. Yes, I did.
>
> Q. What did you – – what was that discussion about?
>
> A. I told Mr. Finkelstein would he file an appeal for me based on the act of what the sentence I had received.
>
> Q. And what was Mr. Finkelstein's response to that instruction?
>
> A. He assured me that he was going to file an appeal for me.
>
> Q. And why did – – you stated that you asked him to appeal it based on the sentence you had received. Be a little more bit specific. Why based on the sentence you had received?
>
> A. Because I thought I was going to – – see, it's some things that I thought I was going to get the low end, and the judge sentenced me on the high end based on my previous juvenile record at the particular time, and I didn't receive any points for that, so I wanted at that particular time for him to appeal based on that issue.
>
> Q. Did Judge Sands sentence you to a term of months that was above the top guideline range from the PSI?
>
> A. No, sir.
>
> Q. He sentenced you at the top of the guideline range, right?
>
> A. Yes, sir.

2

Despite his desire for a lesser sentence, the record reflects that Petitioner Jones had entered into a Plea Agreement with the Government wherein he waived his right to appeal his sentence except in the event that the Court imposed a sentence that *exceeded* the advisory guideline range calculated from the PSI in his case. (R-7 at Section (3)(I)). Petitioner had, thus, waived his right to a direct appeal of a sentence within the advisory guideline range. The United States Court of Appeals for the Eleventh Circuit has "consistently enforced knowing and voluntary appeal waivers according to their terms." *United States v. Bascom,* 451 f3 1292, 1294 (11th Cir. 2006); *See United States v. Brown,* 415 F.3d 1257, 1272 (11th Cir. 2005); *United States v. Frye,* 402 F.3d 1123, 1129 (11th Cir. 2005); *Williams v. United States,* 396 F.3d 1340, 1342 (11th Cir. 2005); *United States v. Rubio,* 396 F.3d 1330, 1335 (11th Cir. 2005). Moreover, Judge Sands questioned Petitioner Jones extensively at his Plea Hearing on September 18, 2006 (R-22), about freely, voluntarily, and understandingly entering into the Plea Agreement , and specifically about his understanding of his waiver of his right to appeal a sentence within the guideline range which he may receive after pleading guilty, to which Petitioner Jones acknowledged affirmatively that he understood the appeal waiver provisions. *Id.* at pp. 39, 40.

Petitioner Jones's Plea Counsel was asked at Jones's § 2255 Motion Hearing (R-24), "Do you recall Mr. Jones at any point ever discussing an appeal with you?" Counsel answered:

> A. I am fairly convinced that that subject never came up. . . . I can't say absolutely – – well, it's the kind of thing, again, I note it, I would discuss it, I would research it. It's just not the kind of thing – – based on my approach to practicing law and practicing criminal law, it's not something that I would let slide and not make a note on my file about. . . . Most importantly, I would try to figure out what in the world we could have appealed because there really would have been nothing to appeal on a case like this. The sentence was within the guidelines.

*Id.* at 68, 69. Attorney Finkelstein's concern for the subject was far more serious than Petitioner

Jones's cursory reference to an appeal, and therefore far more credible. Jones's testimony did not appear convincing that he had actually discussed with his counsel appealing his sentence, contrary to the terms of his Plea Agreement. Jones has not shown that he is entitled to an out-of-time appeal.

As **Ground One** of his Motion To Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, Petitioner Jones claims;

> Counsel failed to file several needed motions. Counsel failed to investigate the facts, laws, and pleadings in the case. Counsel failed to go over Plea Agreement with Defendant. Counsel failed to investigate eye witness. Counsel withheld information from the Defendant. Counsel failed to check the veracity of the search warrant application. It is error to decide on basis of Affidavit without a hearing. Failure to seek disclosure of confidential informant identity, failure to file direct appeal. Plea was not voluntary and intelligently made.

The failure to appeal issue has been addressed above and found to be without merit. Petitioner's **Ground Two** asserts that, the affidavit used to obtain the search warrant was not supported by probable cause. This claim is within the purview of Petitioner's claim in Ground One regarding the veracity of the search warrant. Petitioner's **Ground Three** asserts that, "Appellant pled guilty and was punished upon facts that were not true; appellant was sentenced on misstatement of law." Petitioner's claim here is vague and conclusory, but is subject to full discussion with his multiple claims in his Ground One. Petitioner's **Ground Four** claims ineffective assistance of counsel for failing to object to the PSI, adding that, "Counsel gave Appellant erroneous advise and made Appellant plead guilty to false information in the PSI report." Petitioner does not elaborate as to what the erroneous advice was nor what the false information in the PSI was,[2] and he did not address those claims at the hearing. However, Petitioner's non-conclusory claims will be discussed

---

[2] "Conclusory allegations of ineffective assistance are insufficient." *Wilson v. United States,* 962 F.2d 996 (11th Cir. 1992); *United States v. Lawson,* 947 F.2d 849, 853 (7th Cir. 1991).

4

fully in consideration of his all inclusive Ground One.

## Conclusions of Fact and Law

To establish a claim for relief based upon ineffective assistance of counsel, Petitioner must meet the two pronged test of *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052 (1984): (1) Petitioner must show that his counsel's representation was deficient; and (2) Petitioner must show that this deficient representation prejudiced Petitioner. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2952 (1984); *See Baxter v. Thomas,* 45 F. 3d 1501, 1512 (11th Cir. 1995). The two-pronged *Strickland* test is applicable to ineffective assistance of counsel claims arising out of the plea process. *Hill v. Lockhart,* 474 U.S. 52, 57, 106 S. Ct. 366 (1985). As applied to the plea situation, the first prong of *Strickland* remains the same; the attorney's conduct must be shown to have fallen outside the range of reasonable conduct. *Hill,* 474 U.S. at 58. Counsel need only provide a client who pleads guilty with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial. *Wofford v. Wainwright,* 748 F. 2d 1505, 1508 (11th Cir. 1984). The second prong of the *Strickland* test focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Hill,* 474 U.S. at 59. In other words, in order to satisfy the prejudice requirement, Petitioner must show that there is a reasonable probability that, but for counsel's errors, Petitioner would not have pleaded guilty and would have insisted on going to trial. *Id.*

Petitioner Jones's assertion that he pled guilty and was punished upon facts that were not true is contrary to the stipulation of facts contained in his Plea Agreement (R-7), and to his answers to Judge Sands questions to him at his Change of Plea Hearing (R-22). After being placed under oath in open court on September 18, 2006 (*Id.* at 7), Jones testified that he understood that false

5

statements made in court could subject him to perjury charges and otherwise be used against him. *Id.* at 7, 8. Jones testified that he had obtained a General Equivalency Diploma (GED) and could read and write the English language and that he understood the proceedings and was able to understand and answer the Court's questions. *Id.* at 8, 9. He testified that he had received and gone over the two Count information against him with his attorney who had explained the charges to him, and advised him of his rights in the case. *Id.* at 9, 10. Jones said that he was satisfied with his attorney's representation. The Court then inquired about Petitioner's Plea Agreement with the Government, and Jones acknowledged that he had received a copy of the actual agreement, had read it himself, had discussed it with his attorney, and believed that he understood it. *Id.* at 10, 11. Petitioner Jones told the Court that he had not been forced by anyone, or coerced, or threatened in any way to enter into the Plea Agreement, nor had anyone at any time made any promise to him to get him to enter into the Plea Agreement. *Id.* at 11. Jones also told the Court that the Plea Agreement to his knowledge contained the whole agreement between him and the Government. *Id.* Jones acknowledge to the Court that he knew that any recommendations contained in the Plea Agreement were not binding on the Court, and that if the Court did not follow a particular recommendation, he would not be allowed to withdraw his guilty plea based on that fact. *Id.* at 12. Jones acknowledge that he had gone over the entire Plea Agreement and had signed and initialed each page. *Id.*

Jones advised the Court that he had no questions at all about the Plea Agreement. *Id.* at 13.

At that point, Petitioner's Counsel advised the court of the following:

> I would like to add something for the record, if I may. We have had two separate fact based hearings in the state court concurrent prosecution, and I think the Court should be at least aware that Mr. Jones has had a full opportunity to hear the evidence against him, and to have the witnesses – be confronted with the witnesses, and to have an opportunity to have them cross examined in his presence. So I

6

> think the Court should be aware that he's very conversant with what the factual basis is for the – – related to this charge. . . . One was a preliminary hearing and a concurrent criminal prosecution which I understand, if it hasn't already been dismissed, will be dismissed because of this prosecution. The other a parole revocation hearing. . . . The witnesses who would have testified in this federal action have already testified under oath and they have been cross examined and Mr. Jones was present on both occasions.

*Id.* at 13, 14. The Court then asked Petitioner Jones if he agreed that that was correct, to which Jones answered, "Yes, sir." *Id.* at 14. The Plea Agreement, containing Petitioner's stipulation of the facts of his offenses, his guilty plea to those offenses, and his waiver of appeal, was then order by the Court to be filed in the case. *Id.*

Further, at the Change of Plea hearing (R-22), Petitioner Jones acknowledged that the penalty he faced for Count One of the Information brought against him subjected him to a mandatory minimum sentence of ten (10) years imprisonment up to a maximum sentence of life imprisonment, and that the penalty he faced for Count Two of the Information brought against him subjected him to a maximum penalty of twenty (20) years imprisonment. *Id.* at 15, 16. The Court summarized the charges and the Government's burden of proof as to the charges against Petitioner Jones, and the Court then asked Jones if he had "any question at all as to what either of these charges mean?" Petitioner Jones answered, "No, sir." *Id.* at 24. The Court explained at length Petitioner's right to be indicted by a grand jury, to which Jones indicated repeatedly that he understood, and then freely and voluntarily waived his right to have an Indictment returned against him by a grand jury proceeding. *Id.* at 25-28.

The Court then explained at length Petitioner Jones's right to a trial by jury and all of the presumptions and procedures that go along with such right, all of which Petitioner Jones indicated that he understood. *Id.* at 31-35. The Court had the Assistant U.S. Attorney recite the full report

7

of the events of the evening of January 19, 2006, stating that "the Southwest Georgia Drug Task Force lawfully obtained a valid search warrant to search the home of defendant located in Pelham, Mitchell County, Georgia," but that prior to executing the warrant the Task Force was placed in a surveillance location behind the home in a field, form which they observed defendant Jones conduct a number of what appeared to be narcotics transactions, and upon executing the warrant and making arrest at the scene, the Task Force seized cash and substances which appeared to be cocaine, cocaine base, and drug paraphernalia; that the substances tested positive for cocaine and crack cocaine. *Id.* at 41, 42. The Court then asked Petitioner Jones if he had heard what was stated by Counsel for the Government with regard to what the facts were in his case, to which Jones answered, "Yes, sir." *Id.* at 44. The following colloquy immediately followed:

> THE COURT: [Do] you agree that that's basically what happened?
>
> DEFENDANT: Yes, sir.
>
> THE COURT: In other words, you agree that you were involved and naturally had possession of these controlled substances as alleged in the information?
>
> THE DEFENDANT: Yes, sir.

*Id.* The Court then asked Jones if he understood how the case could proceed if he were to plead guilty to the information, to which he answered that he did. The Court then asked:

> THE COURT: Understanding the right to plead guilty or not guilty to the charges, what plea do you wish to make, guilty or not guilty?
>
> DEFENDANT: Guilty, sir.
>
> THE COURT: Do you offer your plea of guilty to the information or to two counts freely and voluntarily, of your own free will?
>
> DEFENDANT: Yes, sir.

8

> THE COURT: Has anyone forced you or coerced you or threatened you at all to get you to enter a plea of guilty to these charges?
>
> DEFENDANT: No, sir.
>
> THE COURT: As I asked you earlier, has anyone at any time promised you anything else other than what is in the plea agreement and what's been stated to the Court today on the record in order to get you to plead guilty to these charges?
>
> DEFENDANT: No, sir.
>
> THE COURT: Do you offer your plea of guilty to these two charges because you believe you are in fact guilty of them?
>
> DEFENDANT: Yes, sir.

*Id.* at 44. At that time Petitioner Jones entered his plea of guilty under the terms stated and the understanding acknowledged. He was under oath at that time and his attempts now to undo all of the proceedings which he put this court through to assure that all of his rights were preserved, should not be allowed. There is no factual nor legal basis for his present claims.

He has failed to carry his burden of showing that his attorney's representation fell below reasonable standards under the law and particularly under the factual circumstances of Petitioner's case. His unqualified admissions of guilt to the court and his Plea Agreement stipulation of fact obviate the necessity of any inquiry into the probable cause of a search warrant. Moreover, the officers on the Task Force observed criminal conduct occuring on the premises at the time of Petitioner's arrest, which presented sufficient probable cause for the search of Petitioner's person and the van into which he tossed a suspect substance when he detected the officers, all as shown above, regardless of their possession of a search warrant which Petitioner Jones in his Plea Agreement stipulation of facts acknowledged to be a valid search warrant.

**WHEREFORE, IT IS RECOMMENDED** that Petitioner's Motion To Vacate, Set Aside,

or Correct Sentence pursuant to 28 U.S.C. § 2255 be DENIED. Pursuant to 28 U.S.C. § 636 (b)(1), Petitioner may serve and file written objections to this Recommendation with the UNITED STATES DISTRICT JUDGE, WITHIN TEN (10) DAYS after being served with a copy hereof.

SO RECOMMENDED this 31st day of July 2008.

S/ G. MALLON FAIRCLOTH
UNITED STATES MAGISTRATE JUDGE